IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL RECKER, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-2095-LRR <br><br> REPORT AND RECOMMENDATION |

The claimant, Michael Recker (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that he was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I. BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 17). Claimant was 57 years old on the date of alleged onset of disability and 60 years old at the time of the ALJ's decision. (AR

25, 37, 145).[1]  He has a high school education.  (AR 37).  Claimant has past relevant work as a truck driver.  (AR 27-44, 204).

On July 1, 2013, claimant protectively filed an application for disability benefits alleging a disability onset date of October 20, 2012.  (AR 143-52, 186).  Claimant asserts he was disabled due to left arm nerve damage, carpal tunnel syndrome in his left wrist, neck and left shoulder problems, sleep apnea, and difficulty breathing.  (AR 190).

The Social Security Administration denied claimant's disability application initially and on reconsideration.  (AR 81-84, 87-95).  Claimant filed a request for a hearing before an ALJ.  (AR 97).  On April 9, 2015, ALJ JoAnn Draper conducted a hearing at which claimant and a vocational expert testified.  (AR 33-56).  On May 29, 2015, the ALJ found claimant was not disabled.  (AR 16-27).  On June 16, 2016, the Appeals Council affirmed the ALJ's finding.  (AR 1-6).  The ALJ's decision, thus, became the final decision of the Commissioner.  20 C.F.R. § 404.981.

On August 17, 2016, claimant filed a complaint in this Court.  (Doc. 4).  In February and March 2017, the parties briefed the issues.  (Docs. 18-20).  On March 27, 2017, this case was deemed fully submitted and ready for decision.  (Doc. 21).  On the same day, the Honorable Linda R. Reade, United States District Court Judge, referred this case to a United States Magistrate Judge for a Report and Recommendation.

---

[1] "AR" refers to the administrative record below.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, she "is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is

not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant can still do her past relevant work then she is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The

RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since October 20, 2012, the alleged onset date. (AR 18).

At Step Two, the ALJ found that claimant had the severe impairments of "left ulnar neuropathy and shoulder impingement, status-post left carpal tunnel syndrome, mild degenerative disc disease (cervical spine) and obesity." (AR 19). The ALJ found

claimant also had non-severe impairments of hypertension, hyperlipidemia, diabetes mellitus, and obstructive sleep apnea. (*Id*.).

At Step Three, the ALJ found that none of the claimant's impairments equaled a presumptively disabling impairment listed in the relevant regulations. (AR 19).

At Step Four, the ALJ found claimant had residual functional capacity to perform light work such that he could lift and carry 20 pounds occasionally and 10 pounds frequently. (AR 19). The ALJ found the additional following functional limitations also applied:

> [Claimant] could stand or walk for six hours in and eight-hour workday and sit for six hours in an eight-hour workday. He could only occasionally climb, balance, stoop, kneel, and crawl. He could never crouch and never climb ladders, ropes, or scaffolds. He could only occasionally reach overhead with his left (non-dominant) upper extremity. He should have not [sic] exposure to hazardous conditions, such [as] working around heights or moving machinery. He should have no more than occasional exposure to temperature extremes, such as heat, cold, or humidity.

(AR 19-20). Also at Step Four, the ALJ determined that claimant was unable to perform any past relevant work. (AR 25).

Finally, at Step Five, the ALJ found that at age 57, claimant was an individual closely approaching advanced age at the time of the alleged onset of disability and that claimant subsequently changed age category to advanced age. (AR 25). Relying on testimony from the vocational expert, the ALJ found claimant had acquired skills from past relevant semi-skilled work, including basic maintenance, documenting, following written instructions, and basic clerical skills. (*Id.*). Based on testimony from the vocational expert, the ALJ concluded that claimant had transferable skills to perform other jobs existing in significant numbers in the national economy, including Gate Guard,

Tray Setter, Host, Information Aid, Food Checker, and Circulation Clerk. (AR 25-26). Therefore, the ALJ concluded claimant was not disabled. (AR 26).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

7

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant asserts that the ALJ erred (1) in finding that claimant could perform other work, asserting that the ALJ failed to properly consider the transferability of skills from claimant's past relevant work; and (2) in failing to adequately account for claimant's left ulnar neuropathy and status-post left Carpal Tunnel Syndrome in the ALJ's residual functional capacity assessment. I address each argument in turn below.

8

### A. *Claimant's Ability to Perform Other Work*

Claimant argues that the ALJ erred in finding claimant could perform other work in the economy. (Doc. 18, at 3-7). Claimant argues that the ALJ was required to find that claimant had transferable skills as a result of past relevant work that made him "highly marketable" in the national economy, relying on *Kerns v. Apfel*, 160 F.3d 464, 469 (8th Cir. 1998). (Doc. 18, at 4). Claimant further faults the ALJ for "fail[ing] to discuss whether very little, if any, vocational adjustment was required in terms of tools, work processes, work settings, or the industry and [for] fail[ing] to discuss whether skills were highly marketable." (*Id*.). Claimant asserts that the ALJ's decision lacks "any discussion as specifically which jobs of [claimant] constitute past relevant work and which of those alleged acquired skill(s) would transfer to another occupation." (*Id*.). Noting that claimant's past relevant work involved truck driving, claimant cites the Commissioner's Program Operations Manual System (POMS) for the proposition that "specialized truck driving jobs do not generally give rise to the existence of transferable skills." (Doc. 18, at 5 & n.1). Finally, claimant argues that "skills" identified by the vocational expert, such as following instructions, alertness, close attention, coordination, dexterity, judgment, and responsibility for a work product were not skills but rather traits. (Doc. 18, at 6).

At the hearing, the ALJ posed hypothetical questions to the vocational expert that included claimant's age, education, employment background, an RFC of light work, and the RFC limitations found by the ALJ. (AR 50-53). The ALJ asked the vocational expert "what would be the skills that would transfer to these jobs?" (AR 51). The vocational expert described the skills as basic maintenance, documenting, following written

9

instructions, and basic clerical skills. (AR 51; AR 25).[2] The vocational expert testified that given all of these factors, including the transferable skills, there were jobs in the local and national economy available for claimant despite claimant's residual functional capacity. (AR 51-54). In her decision, the ALJ found "claimant ha[d] acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (AR 25).

I find that claimant's first assertion of error is without merit. As an initial matter, claimant's reliance on *Kerns* is misplaced. In holding that for a claimant to be employable in the national economy the Commissioner was required to show the claimant had "highly marketable" skills from past relevant work, the Eighth Circuit Court of Appeals relied on language in 20 C.F.R. § 404.1563(d). *Kerns*, 160 F.3d at 468. As the Commissioner has pointed out (Doc. 19, at 7-8), in 2000 the Commissioner issued a ruling clarifying that requirement and removing that language.[3] Accordingly, the requirement for showing a claimant has "highly marketable" transferable skills no longer exists and has not exited since 2000. *Cf. Boyle v. Halter*, 165 F. Supp.2d 943, 945-46 (D. Minn. 2001) (where a claimant's case was still pending at the administrative level before the 2000 change in the Code of Federal Regulation, the court remanded this "quite out of the

---

[2] I note that the hearing transcript reads: "basic maintenance <u>of some book</u>. Basically, it would be documenting, following basic written instructions. Some very basic clerical skills." (AR 51 (emphasis added)). I can only conclude that the words "of some book" are a transcription error because they are nonsensical. The ALJ who presided over the hearing and heard the vocational expert's testimony described the skills as I have set them forth above. (AR 25).

[3] *See* Federal Old-Age, Survivors and Disability Insurance and Supplemental Security Income for the Aged, Blind, and Disabled; Determining Disability and Blindness; Clarification of "Age" as a Vocational Factor, 65 Fed. Reg. 17,994 et. seq. (2000) (codified at 20 C.F.R. § 404.1563, 404.1568 (2001)).

ordinary" case to allow the claimant to "obtain the benefit of the law at the time her case was still pending at the administrative level.").

Claimant's reliance on the Program Operations Manual System (POMS) is similarly misplaced. Although an ALJ should consider them in their findings, POMS provisions have no legal force and are not binding on the Commissioner. *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). More importantly, POMS DI 25015.017(J)(2), upon which claimant relies indicates that basic driving abilities associated with specialized truck driving jobs do not generally transfer to other work. That is irrelevant here because the vocational expert did not testify that claimant's truck driving skills were the transferable skills that qualified him to work other jobs. Rather, the vocational expert identified basic maintenance, documenting, following written instructions, and basic clerical skills. (AR 25 & 51).

An ALJ may rely on a vocational expert's testimony that a claimant had transferable skills. *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (holding that an ALJ's reliance on a vocational expert's testimony regarding transferability of skills "is explicitly allowed by [the regulations]."). *See* 20 C.F.R. § 404.1566(e) (stating an ALJ may rely on a vocational expert's testimony regarding whether a claimant's past relevant work skills are transferable to other jobs in the national economy). Here, the ALJ relied on the vocational expert's assessment that claimant had transferable skills from his past relevant work as a truck driver that would make him employable. The ALJ was entitled to rely on that expert's opinion. *See Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998) (holding that a vocational expert's testimony that a claimant had skills from his past relevant work as a truck driver that would transfer to other jobs in the national economy constituted substantial evidence to support the ALJ's finding that the claimant acquired

11

skills in his past truck driving job that he could transfer to other jobs).  *See also Willoughby v. Colvin*, No. 4:15-CV-634-JLH-JTR, 2016 WL 3919469, at *2-3 (E.D. Ark. Jun. 23, 2016) (finding substantial evidence supported ALJ's conclusion when a vocational expert testified that claimant had skills from her past relevant work as a truck driver that were transferable to other jobs in the national economy).

Claimant faults the ALJ and vocational expert for not specifically identifying the skills that were found to be transferable.  This argument has no merit.  The Eighth Circuit Court of Appeals has made it clear that neither the ALJ, nor the vocational expert, is required to identify the claimant's transferable skills.  *Tucker v. Barnhart*, 130 Fed. App'x 67, 68 (8th Cir. 2005).

Claimant argues that substantial evidence does not support the ALJ's decision because there was no specific finding that there would be "very little" vocational adjustment from claimant's past relevant work to other jobs.  This language comes from the regulations, which provides: "If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  20 C.F.R. § 404.1568(d)(4).  The skills at issue in this case, however, are of the type of "clerical, professional, administrative, or managerial" skills that the Social Security Administration has found "universal[ly] applicab[le] across industry lines."  SSR 82-42, 1982 WL 31389, at *6 ("[W]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or

12

managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment . . ..").  Here, the vocational expert found claimant's transferable skills included documenting, following written instructions, and basic clerical skills.  (AR 51).  Moreover, an ALJ does not need to specifically articulate this talismanic language; an ALJ may rely on a vocational expert, familiar with the regulations and the transferability of skills, when the expert opines that a claimant has transferable skills.

Finally, there is little support for claimant's attempt to argue that the vocational expert identified "traits" and not "skills" that were transferable.  Claimant cites authority for the proposition that things like alertness, close attention, coordination, dexterity, judgment, and "responsibility for a work product" are traits, not skills.  (Doc. 18, at 6).  That may be so, but it is irrelevant here because the vocational expert did not identify any of those traits as transferable skills possessed by claimant in this case.  Of all the alleged traits identified by claimant, only one—following written instructions—was identified as a transferable skill by the vocational expert.  Claimant alleges that is a trait and not a skill, but cites no authority to support that alleged distinction.

Although the term "skill" is not defined in the regulations, it is elucidated in an SSA Ruling that is designed to "explain the concepts of 'skills' and 'transferability of skills' and to clarify how these concepts are used in disability evaluation."  SSR 82–41, Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations ("SSR 82–41"), 1982 WL 31389, at *1 (Feb. 26, 1979).  SSR 82–41, states in part that:

> A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the

unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82–41, at *2. SSR 82-41 goes on to explain the difference between a "skill" and a "trait":

> The regulations definition of semiskilled work in regulations sections 404.1568(b) and 416.968(b) states that semiskilled jobs "may require alertness and close attention . . . coordination and dexterity . . . as when hands or feet must be moved quickly to do repetitive tasks." These descriptive terms are not intended, however, to illustrate types of skills, in and of themselves. The terms describe worker traits (aptitudes or abilities) rather than acquired work skills.
> Skills refer to experience and demonstrated proficiency with work activities in particular tasks or jobs. In evaluating the skill level of [past relevant work] or potential occupations, work activities are the determining factors.
> Worker traits to be relevant must have been used in connection with a work activity. Thus, in the regulations, the trait of alertness is connected with the work activities of close attention to watching machine processes, inspecting, testing, tending or guarding; and the traits of coordination and dexterity with the use of hands or feet for the rapid performance of repetitive work tasks. It is the acquired capacity to perform the work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills.

*Id.*, at *3 (emphasis added).

Given these definitions of skills and traits, the ability to follow directions appears to me to be more of a trait than a skill. Nevertheless, the remaining transferable skills identified by the vocational expert—basic maintenance, documenting, and basic clerical

14

skills—are all skills under the definition. Further, claimant's ability to follow written directions, even if labeled a trait, enhances claimant's ability to perform these other skills. There is no showing here that whether following instructions is labeled a skill or a trait had any impact on the vocational expert's opinion that there were jobs available in the national economy that claimant could perform despite his residual functional capacity.

In sum, I find there was substantial evidence in the record as a whole to support the ALJ's conclusion that claimant had sufficient transferable skills and residual functional capacity.

### B. *The ALJ's RFC and Claimant's Left Arm Impairments*

Claimant alleges that the ALJ erred by failing to sufficiently account for claimant's left ulnar neuropathy and status-post left carpal tunnel syndrome in the ALJ's RFC assessment. (Doc. 18, at 6-7). Claimant argues that the only RFC limitation addressing these impairments is the restriction to overhead reaching. (Doc. 18, at 7). Claimant argues that an EMG test shows objective evidence of ulnar neuropathy at the left elbow and exams showed arm and hand weakness and a 25% grip loss in the left hand. (*Id.*). Claimant also relies on his own testimony that he had a hard time gripping things and pushing and pulling things. (Doc. 18, at 8).

In determining claimant's RFC assessment, the ALJ summarized all of claimant's self-reports of restrictions using his left arm upon which claimant is now relying. (AR 20, 210, 215). The ALJ also considered claimant's assertion that he had felt tingling or pins and needles like feeling in his left hand following a July 2012 car accident. (AR 21, 302). The ALJ also noted claimant's December 2012 EMG reading of mild left median ulnar neuropathy. (AR 21, 426). The ALJ's RFC assessment limited claimant to light

15

Case 6:16-cv-02095-LRR-CJW   Document 23   Filed 07/07/17   Page 15 of 18

work, meaning claimant was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. (AR 19). The RFC also restricted claimant from ever climbing ladders, ropes, or scaffolds. (AR 20). Finally, the RFC provided that claimant could "only occasionally reach overhead with his left (non-dominant) upper extremity." (*Id*.).

Claimant has the burden of proving that his left ulnar neuropathy and carpal tunnel syndrome required additional limitations. *Goff*, 421 F.3d at 793 (claimant bears the burden of demonstrating RFC limitations). Despite noting all of the evidence upon which claimant relies, the ALJ also relied on other medical evidence that indicated that claimant's left arm impairments were not as severe as claimant's representation. The ALJ noted claimant exhibited full strength throughout his upper extremities. (AR 22, 495, 504, 508). By December 2012, claimant had full range of motion in his upper extremities. (AR 375). Moreover, although claimant had complained of tingling in his left hand, a June 2013 report indicated claimant continued to make gains in increasing his strength in his left shoulder, wrist and hand strength. (AR 287). Although claimant had some decrease in grip strength, that too improved such that by June 2013 his hand strength was found to be normal and symmetrical in both hands. (AR 21, 347, 424). By March 2015, claimant's treating physician's assistant found claimant did not have significant reaching, handling, or fingering limitations. (AR 23, 526).

As to claimant's own reports of impairments and limitations, the ALJ found claimant was not credible regarding the severity of those impairments. (AR 24). The ALJ took into account the fact claimant worked part-time, received unemployment benefits, and engaged in daily activities that suggested his impairments were not as severe as claimant reported. (AR 20, 24, 38, 204, 211, 213, 231, 329). Moreover, the ALJ

16

noted there were "remarks from multiple treating sources suggesting the claimant's symptoms were inconsistent with clinical findings and diagnostics." (AR 24).

In his reply brief, claimant argues that the Commissioner engaged in post hoc rationalization and justification of the ALJ's decision rather than relying on what the ALJ actually articulated. That is simply not the case. The citations provided above each reference the ALJ's decision where the ALJ cited to and relied on the medical records and claimant's work and daily activities.

In short, there was substantial evidence to support the ALJ's RFC assessment. Even if the evidence would allow for the possibility of drawing a conclusion in favor of claimant, the substantial evidence standard embodies a zone of choice within which the Commissioner may act. *Culbertson*, 30 F.3d at 939. The ALJ's decision regarding the RFC in this case was well within that zone of choice.

## *VI. CONCLUSION*

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal

from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

   **IT IS SO ORDERED** this 7th day of July, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa

18

Case 6:16-cv-02095-LRR-CJW   Document 23   Filed 07/07/17   Page 18 of 18